**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 13-cv-01700-CMA-BNB

**ROBERT O'BRIEN**, individually,
and on behalf of all others similarly situated,

    Plaintiff,

v.

**AIRPORT CONCESSIONS, INC.**, a Colorado corporation,
d/b/a **CONNECTIONS MADE EZ,**

    Defendant.

---

**MEMORANDUM IN SUPPORT OF THE PARTIES' JOINT MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION
SETTLEMENT AGREEMENT AND NOTICE TO THE CLASS**

---

Plaintiff ROBERT O'BRIEN (the "Class Representative" or "Plaintiff"), on behalf of himself and the proposed Class Members, and Defendant Airport Concessions, Inc. d/b/a CONNECTIONS MADE EZ ("Defendant" or "ACI"), by and through their respective counsel, hereby jointly move this Court for preliminary approval of the Class Action Settlement Agreement ("Agreement") they have entered into, a copy of which is attached to the Motion as Exhibit 1.

The Settlement Agreement is the product of extensive arm's length negotiations between the parties, and the parties believe it represents a fair, reasonable, and adequate settlement of the claims asserted by the Class Representative, individually and on behalf of the proposed Class Members. Indeed, the terms of the proposed settlement are consistent with other class action settlements of claims throughout the

United States which, like the claims asserted by the Class Representative here, are based on alleged violations of the Fair and Accurate Credit Transactions Act ("FACTA"). Under the circumstances, the parties submit that preliminary approval of the Settlement Agreement is warranted.

## BACKGROUND

On December 4, 2003, Congress enacted FACTA in an effort to address the issues of identity theft and credit card fraud. FACTA, 15 U.S.C. §1681, *et seq.*, added sections to the Fair Credit Reporting Act which, among other things, prohibited the display of more than the last five digits of a customer's credit or debit card account number or the card's expiration date on electronically generated receipts provided to the cardholder at the point of sale. 15 U.S.C. §1681c(g)(1). For most merchants, FACTA became effective on December 4, 2006. 15 U.S.C. §1681c(g)(3). In order to help promote compliance, FACTA provides statutory penalties of between $100 and $1000, but only for willful violations of FACTA's requirements. 15 U.S.C. §1681n(a).

On June 27, 2013, the Class Representative filed his Class Action Complaint in this action alleging that Defendant willfully violated FACTA by displaying the expiration date of his customer credit card on a receipt issued at a Defendant-owned and operated Connections Made EZ store. The Class Representative purports to represent a class consisting of:

> all persons who received an electronically printed receipt at the point of sale or transaction from any Connections Made EZ store located in Denver International Airport or Rogue Valley International-Medford Airport, in a transaction occurring after June 3, 2008, which receipt displays the expiration date of the person's credit card or debit card.[1]

---

[1] A listing of Defendant's stores is attached to the Agreement as <u>Exhibit A</u>.

>Excluded from the Class are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any person who has had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

Defendant denies Plaintiff's allegation that it willfully violated FACTA. In addition, shortly after receiving notice of this action, Defendant saw to it that its retail stores were no longer printing expiration dates on its customers' credit and debit card receipts. The parties agree, however, that neither Plaintiff nor any putative Class Member has suffered any actual monetary injury as a result of the content of Defendant's receipts.

Soon after the filing of the Complaint, the parties began settlement negotiations. In connection with those negotiations, Defendant provided Plaintiff and Class Counsel with informal discovery related to the purported Class size, average daily sales, the financial status of Defendant, the circumstances of the printing of the consumer receipts, and other certification and merits-related issues.

The parties' negotiations ultimately became embodied in a draft Agreement detailing the terms of the settlement. On January 16, 2014, Class Counsel received an affidavit from Defendant's employee, Richard Humbert. Under oath, Mr. Humbert addressed each issue implicated by a possible class action settlement, including Defendant's business operations, customers, insurance, financial status, size and scope of the Class, and compliance with FACTA, and confirmed the representations made by Defendant's counsel during the parties' negotiations and informal discovery. Shortly thereafter, the parties finalized the Settlement Agreement. Mr. Humbert will be presented for a deposition to testify as to the issues set forth in his affidavit.

While the specific terms of the Agreement were heavily negotiated, the general terms and structure of the settlement closely track those of other FACTA class action settlements that have been reached throughout the United States. (Declaration of Thomas A. Zimmerman, Jr., attached hereto as Exhibit 1, ¶ 9). Like the other FACTA class action settlements of which Class Counsel and counsel for Defendant are aware, the Settlement Agreement requires Defendant to provide all Class Members and all other Defendant's customers with a 25% discount off their entire pre-tax purchase price on all purchases[2] made on twenty-four (24) separate dates. Specifically, the key provisions of the settlement include:

- Defendant shall hold twenty-four (24) "Customer Appreciation Days" on separate dates over the course of fifty-two (52) weeks. The first such Customer Appreciation Day will take place within thirty (30) days after the Effective Date of this Agreement, with Notice to begin prior thereto as set forth below. On each such Customer Appreciation Day, any person making a purchase or transaction at or from any Connections Made EZ store located in Denver International Airport or Rogue Valley International-Medford Airport, shall receive an automatic twenty-five percent (25%) discount from his or her total pre-tax purchase price, excluding sales of water, magazines and newspapers. This discount cannot be applied to any item already on sale, and the maximum discount per customer (either per transaction or per day) shall be one hundred dollars ($100). All persons shall be entitled to receive the automatic discount on any or all of the Customer Appreciation Days;

- Defendant will pay $5,000 to the Class Representative for his effort on behalf of the Class;

- Defendant will pay Class Counsel's Court approved attorneys' fees and costs up to a maximum of $80,000; and

- The Class Representative and Class Members will provide Defendant with a full and final release of all released claims.

The key provisions of the settlement are virtually identical to two (2) other FACTA class action settlements that were approved by the U.S. District Court for the Northern

---

[2] Excluding sales of water, magazines and newspapers.

District of Illinois on October 19, 2011 (*See Radaviciute v. Christian Audigier, Inc. et al*, No. 10-cv-08090 (N.D. Ill. 2010) (Dkt. Nos. 44 and 45) (the "*Radaviciute* Case")); and on December 19, 2013 (*See Joseph v. Marbles LLC, et al.*, No. 13-cv-4798 (N.D. Ill. 2013) (Dkt. Nos. 28-29) (the "*Joseph* Case")).

Like the instant lawsuit, the *Radaviciute* and *Joseph* Cases also involved the alleged violation of FACTA by displaying the expiration dates of customers' credit and debit cards on the defendants' computer-generated cash register receipts. (*See Radaviciute* Case, Dkt. No. 35, pp. 10-11, ¶ 2; *Joseph* Case, Dkt. No. 14-1, ¶ 2). Pursuant to the parties' settlement agreements in both cases, the defendants were to hold twenty-four (24) "Customer Appreciation Days," during which customers would receive a twenty-five percent (25%) discount from their total pre-tax purchase price. (*Radaviciute* Case, Dkt. No. 35, pp. 12-13, ¶ 7(b); *Joseph* Case, Dkt. No. 14-1, ¶ 7(b)).

As noted above, both Class Counsel and counsel for Defendant have searched for other FACTA class action settlements throughout the United States. Of the hundreds of FACTA class actions that were filed throughout the United States since FACTA went into effect for most merchants on December 4, 2006, only a relative handful have resulted in class settlements. Of those class settlements of which the parties are aware, most have resulted in discount, coupon, or voucher-based settlements similar to (and often less favorable to class members than) the Settlement Agreement at issue here. (Ex. 1, ¶ 9).

**ARGUMENT**

**I.     THE COURT SHOULD ENTER THE PROPOSED ORDER PRELIMINARILY APPROVING THE SETTLEMENT.**

Review and approval of a proposed class action settlement occurs in two steps. In the first instance, "[t]he judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a), and at least one of the subsections of Rule 23(b)." *Manual for Complex Litig., Fourth*, §21.632 (2004). Next, "[t]he judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the fairness hearing." *Id.* If the proposed settlement falls "within the range of possible approval," the Court should grant preliminary approval and authorize the parties to give notice of the proposed settlement to the class members. *Gautreaux v. Pierce*, 690 F.2d 616, 621, n.3 (7th Cir. 1982).

Stated another way, preliminary approval is a "determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Association-Eastern Railroads*, 627 F.2d 631, 634 (2d Cir. 1980). If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing. *See In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).

Here, the proposed settlement falls well within the "range of possible approval," particularly in light of the substantial risks and costs associated with further litigation.

Furthermore, the settlement is entitled to a presumption of fairness, since it was reached through arm's length bargaining between experienced counsel and after a thorough exchange of relevant information. Accordingly, the proposed settlement merits preliminary approval and warrants dissemination of the published notice apprising the Class Members of their opportunity to participate in the settlement, or to opt-out from or object to the settlement.

### A. Strong Judicial Policy Favors Preliminary Approval of the Proposed Settlement.

A strong judicial policy favors resolution of litigation short of trial. *In re Gen. Motors Pick-Up Truck Fuel Tank Prod. Liab.Litig.*, 55 F.3d 768, 784 (3d Cir. 1995), *cert. denied*, 516 U.S. 824 (1995) ("*GM Trucks*") ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation"); *Equal Employment Opportunity Commission v. Hiram Walker & Sons, Inc.,* 768 F.2d 884, 889 (7th Cir. 1985). When a settlement is reached on terms agreeable to all parties, it is to be encouraged. *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1314, n.16 (3d Cir. 1993). One federal district court has articulated the rationale for this policy as follows:

> [W]hen parties negotiate a settlement they have far greater control of their destiny than when a matter is submitted to a jury. Moreover, the time and expense that precedes the taking of such a risk can be staggering. This is especially true in complex commercial litigation.

*Weiss v. Mercedes-Benz*, 899 F.Supp. 1297, 1300-01 (D.N.J. 1995), *aff'd without op.*, 66 F.3d 314 (3d Cir. 1995).

The proposed settlement in this case enjoys a presumption of fairness because it is the product of arm's-length negotiations conducted by experienced counsel who are

fully familiar with class action litigation. *GM Trucks*, 55 F.3d at 785 ("This preliminary determination establishes an initial presumption of fairness when the court finds that: (1) the negotiations occurred at arm's length ... (3) the proponents of the settlement are experienced in similar litigation ... "); *see also Freeman v. Berge*, 2003 U.S. App. LEXIS 12809, *12 (7th Cir. June 20, 2003) (trial court did not abuse its discretion in relying "on the opinion of class counsel" in approving settlement); *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiating at arm's length cannot be gainsaid. Lawyers know their strengths and they know where the bones are buried"); 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions*, §11.41 at 90 (2002); *Manual for Complex Litig., Third*, §30.42 (1995).

As noted above, the proposed settlement reflected in the Settlement Agreement is the product of arm's-length negotiations between counsel for the parties. (Ex. 1, ¶¶ 8 and 10). Furthermore, as set forth in detail in Mr. Zimmerman's Declaration, Class Counsel has significant experience in class action litigation generally, and class-based consumer litigation specifically. (Ex. 1, ¶¶ 2 and 6).

In addition, the parties have exchanged relevant information, including but not limited to discovery relating to Plaintiff and the Class Members' underlying claims and Defendant's defenses thereto, the body of case law that has developed regarding FACTA class actions, the size of the potential class, and other FACTA class action settlements. (Ex. 1, ¶ 10). During the settlement negotiations, counsel had adequate information regarding the strengths and weaknesses of Plaintiff's case. Plaintiff considered the weaknesses of his case, the risks posed by further litigation, the likely

recovery at trial, and the risks and delays of the inevitable appeals that would follow a trial.  (Ex. 1, ¶ 10).

Based on their careful and informed analysis of the facts, applicable law, and the potential costs and risks associated with continued litigation, the settling parties believe they have negotiated a fair and reasonable settlement that they respectfully submit warrants preliminary approval so that the Class Members may be notified of the proposed settlement and provided with an opportunity to participate in, opt out of, or object to the proposed settlement.  (Ex. 1, ¶ 11).

### B. The Proposed Settlement Is Reasonable in Light of the Substantial Risk of Continued Litigation.

The propriety of settlement compensation is not determined by a "mathematical equation yielding a particularized sum, but turns on whether the settlement falls within a range of reasonableness."  *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 130 (S.D.N.Y. 1997) (internal quotations and citations omitted).  This "reasonableness" is measured by balancing the costs and risks associated with proceeding with the litigation against the potential rewards to the class in light of the strength of plaintiff's case.  *Freeman,* 2003 U.S. App. LEXIS 12809 at *11; *Walker & Sons*, 768 F.2d at 889.  While Class Counsel continues to believe that the Class Representative's claims, including the released claims, are meritorious, the Class Representative and Members of the Class face real risks if the Lawsuit continues.  (Ex. 1, ¶ 12).  As noted above, Defendant vigorously disputes Plaintiff's allegation that it willfully violated FACTA.

In order to establish a willful violation of FACTA, Plaintiff will need to prove that Defendant acted in "reckless disregard of" FACTA's requirements.  *Safeco v. Burr,* 127 S.Ct. 2201, 2203 (2007).  Recklessness must be measured objectively, and involves

"an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* at 2215. This presents a significant burden of proof for Plaintiff and the Class on the present record.

Because there are no allegations of any out of pocket damages by the Class Representative or any of the Class Members and the ability to prove a willful violation by Defendant, it is critical to the ability of the Class Representative and the Class Members to obtain <u>any</u> recovery at all. Moreover, even if the Class Representative could establish a willful violation, there remain legal obstacles to their recovery. For example, any recovery of statutory damages the Class might obtain would be subject to attack as being excessive under *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003), and its progeny.

At the same time, Defendant faces substantial risk if the Lawsuit were to continue, including but not limited to the significant cost of continuing the Lawsuit, the distraction the Lawsuit poses to Defendant's business, and the possibility of a large financial liability which, while Defendant believes is low, cannot be ignored given its magnitude.

In light of these facts, the settling parties submit that the foregoing risks of continuing the Lawsuit faced by the parties support the propriety of preliminary approval of the proposed settlement.

### C. The Proposed Notice to Putative Class Members Is Appropriate.

Federal Rule of Civil Procedure 23(c)(2)(B) states "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances. . . ." Fed.R.Civ.P. 23(c)(2)(B). Rule 23(e)(1) similarly requires "[t]he court must direct notice in a reasonable manner to all class members who would be

bound by a proposed settlement, voluntary dismissal, or compromise." Fed.R.Civ.P. 23(e)(1). Whether a notice satisfies due process requirements will vary by situation, and it is "widely recognized that for the due process standard to be met, it is not necessary that every class member receive actual notice, so long as class counsel acted reasonably in selecting means likely to inform persons affected." *In re Prudential Sec. Inc. Ltd.P'ships Litig.*, 164 F.R.D. 362, 368 (S.D.N.Y. 1996); *see also Burns v. Fontana*, 757 F.2d 151, 154-55 (7th Cir. 1985) ("Rule 23 does not require defendants to exhaust every conceivable method of identification").

As for the content of the notice, Rule 23(c)(2)(B) provides:

> The notice [to a Rule 23(b)(3) class] must concisely and clearly state in plain easily understood language:
>
> - the nature of the action,
> - the definition of the class certified,
> - the class claims, issues or defenses,
> - that a class member may enter an appearance through counsel if the class member so desires,
> - that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and
> - the binding effect of a class judgment on class members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

Under the terms of the Agreement, the parties have agreed to publication by notice to be published for two (2) consecutive days in the *USA Today* newspaper and by posting on Class Counsel's website. Additionally, the parties have agreed to publication by posting a "Notice of Pendency of Class Action," as quoted in Paragraph 9

of the Agreement, in the Connections Made EZ section on Defendant's website's "Concepts" page. The "Notice of Pendency of Class Action" contains a link that, upon clicking it, redirects the reader to the long form notice (discussed below). Furthermore, notice of each "Customer Appreciation Day" will be published regularly on Defendant's website and at Defendant's retail stores in Denver International Airport and Rogue Valley International-Medford Airport, which are holding the "Customer Appreciation Days."

The parties concur that the proposed published notice, long form notice, and notice procedures set forth in the Agreement are appropriate. (Ex. 1, ¶ 11). The proposed published notice and long form notice: describe the nature, history and status of the Lawsuit; define the Class; state the Class claims, issues, and defenses; disclose the right of putative Class members to seek exclusion from the Class or to object to the proposed settlement, as well as the deadlines for doing so; disclose that the Class members may enter an appearance in the Lawsuit through their counsel; and warn of the binding effect of the settlement approval proceedings on individuals who remain in the Class. In addition, the published notice and long form notice describe the terms of the proposed settlement and provide contact information for Class Counsel, as well as identifying the fee that Class Counsel proposes to request from the Court.

The published notice and long form notice also disclose the time and place of the fairness hearing and the procedures for commenting on or objecting to the settlement and/or appearing at the hearing. In addition, the proposed published notice provides a summary of the foregoing and indicates where putative Class Members may view and obtain the long form notice, the Settlement Agreement, and other documents relevant to

the Lawsuit. Accordingly, the proposed forms of notice satisfy all applicable requirements. Indeed, similar notice was approved in both the *Radaviciute* Case and *Joseph* Case. (*Radaviciute* Case, Dkt. No. 38, ¶¶ 4-5; *Joseph* Case, Dkt. No. 19, ¶¶ 3-6).

Under the circumstances, the parties agree that direct mail notice is untenable in this action for two primary reasons. First, it would be extraordinarily difficult, if not impossible, to identify each of the tens of thousands of putative Class Members implicated by the proposed settlement, and to then obtain mailing addresses for such persons. Specifically, the name and address data needed to identify and locate each putative Class Member does not exist in any single depository.

Even if the parties could identify all of the putative Class Members by name, they do not have the information necessary to match those names with addresses. The only potential source for such information is the numerous banks that issued credit cards and debit cards to the putative Class Members. It is highly unlikely that any of these institutions would divulge their credit card and debit card customers' personal information voluntarily, so it would be necessary to seek Court orders directed to all of these institutions—a costly and time-consuming endeavor.

Second, the cost of direct mail notice to the entire universe of putative Class Members would be extremely prohibitive. It is fair to assume that, even accounting for repeat customers, there could easily be tens of thousands of class members. The cost to provide mailed notice to these Class members would be so high as to make it impossible for Defendant to cost-justify the settlement. As a result, the published

notice, long form notice and the notice procedures provided for in the Agreement represent the best practicable notice in the context of this action.

## **CONCLUSION**

For all of the foregoing reasons, the parties respectfully request that the Court: (1) grant preliminary approval of the proposed settlement set forth in the Settlement Agreement; (2) certify the proposed Class, for settlement purposes only, subject to the Class Representative's obligation to demonstrate that the Class satisfies all of the applicable requirements of Rule 23 of the Federal Rules of Civil Procedure prior to final approval of the proposed settlement; (3) authorize the dissemination of the published notice and long form notice under the terms provided for in the Settlement Agreement; (4) schedule a final approval hearing no earlier than the notice response deadline; and (5) grant such other relief as the Court deems just and proper.

006356\0009\10962175.2

Respectfully submitted,

s/ Thomas A. Zimmerman, Jr.
Thomas A. Zimmerman, Jr. (IL #6231944)
Adam M. Tamburelli (IL #6292017)
Frank J. Stretz (IL #6310264)
ZIMMERMAN LAW OFFICES, P.C.
77 West Washington Street, Suite 1220
Chicago, Illinois 60602
Phone: (312) 440-0020
Facsimile: (312) 440-4180
Email: tom@attorneyzim.com

Todd Elliott Mair, #32531
PETERS MAIR WILCOX
1755 Blake Street, #240
Denver, CO 80202
Phone: 303-393-1704
Facsimile: 303-399-8333
Email: tmair@peterslaw.net

*Counsel for the Plaintiff and Class*

s/Jonathan G. Pray
Hubert A. Farbes, Jr., #6353
Jonathan G. Pray
BROWNSTEIN HYATT FARBER SCHRECK, LLP
410 Seventeenth Street, Suite 2200
Denver, CO 80202-4432
Phone: 303.223.1100
Fax: 303.223.0986
Email: jpray@bhfs.com

*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of January, 2014, I electronically filed the foregoing memorandum with the Clerk of Court using the CM/ECF system which will send notification of the filing to the following email addresses:

| | |
|---|---|
| Todd E. Mair<br>Email: tmair@peterslaw.net | Hubert A. Farbes<br>Email: hfarbes@bhfs.com |
| Adam M. Tamburelli<br>Email: adam@attorneyzim.com | Jonathan G. Pray<br>Email: jpray@bhfs.com |
| *Counsel for the Plaintiff and Class* | *Counsel for Defendant* |

s/ Thomas A. Zimmerman, Jr.