**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 13-cv-01700-CMA-BNB

**ROBERT O'BRIEN**, individually,
and on behalf of all others similarly situated,

      Plaintiff,

v.

**AIRPORT CONCESSIONS, INC.**, a Colorado corporation,
d/b/a **CONNECTIONS MADE EZ,**

      Defendant.

---

**DECLARATION OF THOMAS A. ZIMMERMAN, JR.
IN SUPPORT OF THE JOINT MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

---

      I, THOMAS A. ZIMMERMAN, JR., hereby certify and state as follows:

      1.      I am a shareholder of the firm of Zimmerman Law Offices, P.C., counsel for the Plaintiff and the proposed Settlement Class in this matter.  I submit this affidavit in support of the parties' joint motion for preliminary approval of the class action settlement in this matter.

      2.      I have significant experience in class action litigation, generally, and class-based consumer litigation, specifically.   For the past 16 years, I have practiced extensively in class action, corporate, commercial, consumer fraud, product liability, and other complex litigation where I have obtained multi-million dollar jury verdicts.   I represent both plaintiffs and defendants in state and federal trial and appellate courts in various states nationwide.

**EXHIBIT 1**

3.      In 2000, I was voted one of the *Top 40 Illinois Attorneys Under the Age of 40*.  In 2003, the Illinois Supreme Court appointed me to the Review Board of the Attorney Registration and Disciplinary Commission, and the Illinois Governor appointed me to the Illinois Courts Commission.  I was recently appointed as Special Counsel to the Attorney Registration and Disciplinary Commission.

4.      I am admitted to practice law in Illinois, and other states on a case-by-case basis, and I am admitted to practice before the U.S. Supreme Court, federal district courts and federal court of appeals.  Based on my demonstrated experience and ability, I was appointed to the federal court trial bar.

5.      I have been lead counsel in national and state-wide class action litigation, and have handled other multi-party litigation involving such companies as DaimlerChrysler, Commonwealth Edison, Mead Johnson, RC2 Corporation, PrimeCo Communications, the Chicago Sun-Times, Random House, Liberty Mutual Insurance Co., as well as others.

6.      For example, I was lead counsel or co-class counsel in such class action cases, as follows:

(a)      **Class Action for Cellulite Cream — $62 million** recovery for a nationwide class of customers who purchased products that were advertised to reduce cellulite in the human body. We obtained expert testimony to demonstrate that the active ingredients in the products could not shrink fat cells or fundamentally change the structure of skin, such that the products would have no physiological effect on cellulite in the body. Cash refunds were paid to the purchasers of the products, and the manufacturer changed its advertising to stop making those claims. We included in the

class recovery $1 million in donations to charities.

(b)     **Class Action to Recover Cellular Phone Fee — $48 million** recovery for a statewide Illinois class of businesses and individuals who paid a municipal infrastructure maintenance fee on their cellular phone bills. Through litigation, the Illinois Supreme Court declared the fee to be unconstitutional, and we obtained refunds for cell phone customers from the Illinois municipalities that imposed the fee. In addition to having a plaintiff's class of cell phone customers certified by the court, we also convinced the court to certify a defendant's class of Illinois municipalities, which is notable as it is very difficult and uncommon for a court to certify a defendant's class.

(c)     **Class Action from Inflated Newspaper Circulation — $31 million** recovery for a nationwide class of businesses and individuals who placed advertisements in a newspaper. The publisher charged advertisers a rate that was based upon and related to the publisher's representations as to the newspaper's circulation. However, the publisher significantly overstated the newspaper's circulation for several years, which caused the advertisers to overpay to advertise in the newspaper. Cash refunds were paid to the advertisers to reflect the amount of their overpayment, and $5 million was donated to charities.

(d)     **Class Action for Power Outages — $7.75 million** recovery for a statewide Illinois class of businesses and individuals who sustained financial damages due to widespread and prolonged power outages. The outages resulted from the power company neglecting to maintain its transmission and distribution systems, and from placing electric loads on its cables that exceeded the cable's ratings. Thereafter, the company made improvements to its power facilities and distribution systems.

(e)      **Class Action for Unsolicited Faxes — $4 million** recovery for a nationwide class of businesses and individuals who sustained damages resulting from the receipt of unsolicited facsimile advertisements. The defendant's insurance carrier denied coverage for this lawsuit under the defendant's insurance policies. We settled with the defendant with the understanding that we could not recover any money from the defendant's personal assets, but rather we would have to litigate the insurance coverage issue and seek to execute the judgment against the defendant's insurance company. Thereafter, we initiated and pursued a third-party citation proceeding against the insurance company, and through litigation we ultimately recovered the full amount of insurance coverage under the policies. We included in the class recovery $250,000 in donations to charities.

(f)      **Class Action for Defective Baby Formula — $3.5 million** recovery for a nationwide class of Spanish speaking purchasers of baby formula. The instructions for preparation and use printed in Spanish on the product's labeling were incorrect, as they instructed the user to mix two scoops of powder formula with water, rather than correctly using only one scoop of powder. As a result, class members purchased and used twice as many cans of formula as they otherwise should have, and some children experienced vomiting and diarrhea. We included in the class recovery a $100,000 donation to a local charity that focuses on serving the nutritional and educational needs of Hispanic children.

(g)      **Class Action for Consumer Fraud in Book Claiming to Be Non-Fiction Memoir — $2.35 million** recovery for a nationwide class of customers who purchased a fictional book while under the impression that the book was a non-fiction

memoir. As a result of the misleading marketing, customers bought the book when they would not otherwise have done so, had they known the book was full of embellished and inaccurate depictions of the author's life. The author admitted portions of his book were embellished on The Oprah Winfrey Show.

7.      I am currently representing plaintiffs in several nationwide class action lawsuits – including the instant matter against the Defendant – alleging violations of the Fair and Accurate Credit Transactions Act ("FACTA"), arising out of the defendants' alleged printing of the expiration date of the person's credit card or debit card on point of sale receipts.  These cases are pending in various courts across the country.  Some of these FACTA cases have settled, and some are in the process of settling.

8.      In this particular case, the parties' engaged in extensive arm's-length negotiations and exchange of documents relative to a possible settlement of this matter.  Soon after the filing of the Complaint, the parties began settlement negotiations.  In connection with those negotiations, Defendant provided Plaintiff and Class Counsel with informal discovery related to the purported Class size, average daily sales, the financial status of Defendant, the circumstances of the printing of the consumer receipts, and other certification and merits-related issues.  The parties' negotiations ultimately became embodied in a draft Agreement detailing the terms of the settlement.  On January 16, 2014, I received the affidavit of ACI employee Richard Humbert.  Under oath, Mr. Humbert addressed each issue implicated by a possible class action settlement, including Defendant's business operations, customers, insurance, financial status, size and scope of the Class, and compliance with FACTA, and confirmed the representations made by Defendant's counsel during the parties' negotiations and

informal discovery.   The general terms and structure of this settlement closely track those of other FACTA class action settlements that have been reached throughout the United States.   Shortly thereafter, the parties finalized the Settlement Agreement.   Mr. Humbert will be presented for a deposition to testify as to the issues set forth in his affidavit.

9.      I have searched for other FACTA class action settlements throughout the United States.   Of the hundreds of FACTA class actions that were filed throughout the United States since FACTA went into effect for most merchants on December 4, 2006, only a relative handful have resulted in class settlements.   Of those class settlements of which I am aware, most have resulted in discount, coupon, or voucher based settlements similar to (and often less favorable to class members than) the Settlement Agreement at issue here.   The Settlement here is more favorable in that it is not a coupon settlement, but rather a series of "Customer Appreciation Days," which allows Class Members and the general public to take advantage of a significant discount without the need to file any paperwork or do anything other than make a purchase or multiple purchases.

10.     The parties have exchanged relevant information, including but not limited to discovery relating to the Class Members' underlying claims and the Defendant's defenses thereto, the body of case law that has developed regarding FACTA class actions, Defendant's financial position, and other FACTA class action settlements. During the settlement negotiations, I had adequate information regarding the strengths and weaknesses of the Plaintiff's case.   The Plaintiff and I considered the weaknesses of his case, the risks posed by further litigation, the likely recovery at trial, and the risks

and delays of the inevitable appeals that would follow a trial.

11.     Based on our careful and informed analysis of the facts, applicable law, and the potential costs and risks associated with continued litigation, I believe we have negotiated a fair and reasonable settlement that I respectfully submit warrants preliminary approval so that the Class Members may be notified of the proposed settlement and be provided with an opportunity to participate in, opt out of, or object to the proposed settlement.  I concur that the proposed published notice, long form notice, and notice procedures set forth in the Settlement Agreement are appropriate.

12.     While I continue to believe that the Class Representative's claims, including the released claims, are meritorious, the Class Representative and Class Members face real risks if the Lawsuit continues.  Specifically, the Defendant vigorously disputes Plaintiff's allegation that it willfully violated FACTA.

13.     I believe that the instant settlement is fair and reasonable and that the Class Members should accept this settlement.  In light of the risks and expenses of litigation, and the potential defenses of the Defendant, I believe it is in the best interest of the Class that the case be settled and that the settlement terms are fair and reasonable.


__s/ Thomas A. Zimmerman, Jr.___

Pursuant to 28 U.S.C. § 1746, I certify under
penalty of perjury that the foregoing is true
and correct.  Executed on January 17, 2014.