**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 13-cv-01700-CMA-BNB

ROBERT O'BRIEN, Individually, and
on behalf of all others similarly situated,

    Plaintiff,

v.

AIRPORT CONCESSIONS, INC., a Colorado corporation,
d/b/a CONNECTIONS MADE EZ,

    Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S RENEWED MOTION FOR ATTORNEY FEES, COSTS, AND AN INCENTIVE AWARD FOR THE CLASS REPRESENTATIVE**

---

This matter is before the Court on Plaintiff's Motion for Attorney Fees, Costs, and an Incentive Award for the Class Representative ("Fee Motion"). (Doc. ## 47, 55.) For reasons described below, the Fee Motion is granted in part and denied in part. Specifically, the Court awards attorney fees in the amount of **$73,266**, costs in the amount of **$2252.93**, and an incentive award in the amount of **$2,500**.

## I. BACKGROUND

At a hearing on June 18, 2014, this Court Granted a Motion for Final Settlement Approval (Doc. # 53), and reserved judgment on Plaintiff's motion for attorney fees and an incentive award for the class representative. The Court ordered supplemental briefing on two issues: (1) the reasonableness and amount of attorney fees to be awarded to class counsel, and (2) the reasonableness and amount of the class

representative's incentive award.  (Doc. # 53 at 1.)  Plaintiff filed this unopposed renewed motion and memoranda for attorney fees, costs, and an incentive award on July 18, 2014.  (Doc. # 55.)

## II.  DISCUSSION

Pursuant to the parties' Settlement Agreement, Defendant has not responded to Plaintiff's motion for attorney fees.  *See* (Doc. # 46-1 at 4, ¶ 8.)  Accordingly, the Court lacks the benefit of scrutiny and analysis by the opposing party.  Nonetheless, the Court has a duty to ensure that the request for attorney fees is reasonable.  *See Ramos v. Lamm*, 713 F.2d 546, 553–54 (10th Cir.1983), *rev'd in part on other grounds, Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711 (1987) (noting that a district court "must carefully scrutinize the total number of hours reported to arrive at the number of hours that can reasonably be charged to the losing party, much as a senior partner in a private firm would review the reports of subordinate attorneys when billing clients whose fee arrangement requires a detailed report of hours expended and work done.")

The Settlement in this case provides that each Class Member can receive a 25% discount off their purchase at Defendant's stores on 24 "Customer Appreciation" Days, with a maximum discount per Class Member of $100 per transaction or per day.  Thus, the settlement does not provide a "common fund" to compensate class members; accordingly, the Court applies the lodestar method in determining reasonable attorney fees.  *See* 4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2675.2 (3d ed.) ("In cases in which the prevailing party does not obtain a common fund,

but fees otherwise are authorized by statute . . . the primary method used by courts in assessing attorney-fee awards is . . . the lodestar approach.")

Accordingly, the first step in determining reasonable attorney fees is a determination of the "lodestar amount"—*i.e.*, the reasonable hourly rate multiplied by the number of hours reasonably expended. *Hensley*, 461 U.S. at 433; *Malloy v. Monahan*, 73 F.3d 1012, 1017–18 (10th Cir. 1996). The party requesting fees has the burden of persuading the Court that both the hourly rate and the hours expended are reasonable. *Malloy*, 73 F.3d at 1018.

To determine what constitutes a reasonable rate, the district court considers the "prevailing market rate in the relevant community." *Id.* Plaintiffs must provide evidence of the prevailing market rate for similar services by "lawyers of reasonably comparable skill, experience, and reputation" in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). If the district court does not have adequate evidence of prevailing market rates, it may, in its discretion, use other relevant factors, including its own knowledge of prevailing market rates, to establish the reasonable hourly rate. *Lippoldt v. Cole*, 468 F.3d 1204, 1225 (10th Cir. 2006).

In determining the reasonableness of hours expended, the Court considers (1) whether the amount of time spent on a particular task appears reasonable in light of the complexity of the case, the strategies pursued, and the responses necessitated by an opponent's maneuvering; (2) whether the amount of time spent is reasonable in relation to counsel's experience; and (3) whether the billing entries are sufficiently detailed, showing how much time was allotted to specific task. *See Ramos*, 713 F.2d at 553–54. Counsel for the party claiming fees has the burden of substantiating the hours it spent

through "meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Case v. Unified Sch. Dist. No. 233,* 157 F.3d 1243, 1250 (10th Cir. 1998). The Court must ensure that the attorney has exercised the same "billing judgment" as would be appropriate in billing his or her own client. *Id.*; *see also Hensley*, 461 U.S. at 434 ("Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority") (internal quotation marks omitted). Counsel should "make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.

Once the Court determines the lodestar, it may adjust it "upward or downward to account for the particularities" of the work performed. *Phelps v. Hamilton*, 120 F.3d 1126, 1131 (10th Cir. 1997). The Court exercises its "discretion in making this equitable judgment" and does not "apportion the fee award mechanically" by considering each claimed expense and determining its reasonableness overall. *Hensley*, 461 U.S. at 436–40 (holding that the Court "should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained"); *see also White v. GMC, Inc.*, 908 F.2d 675, 684–85 (10th Cir. 1990) (noting that the amount of fees accumulated to secure the desired result must be reasonably related to the type and significance of issue in dispute).

A. **REASONABLE HOURLY RATE**

Plaintiff is unable to provide evidence of a prevailing market rate for attorneys working on Fair and Accurate Credit Transaction Act (FACTA) cases in the District of Colorado because of the relative lack such cases in this district. *See* (Doc. # 55 at 11.)

At the hearing on June 18, 2014, the Court ordered Plaintiff to explain why it should award more than $250.00 per hour, the rate customarily paid to attorneys in cases brought under the Fair Debt Collection Practice Act (FDCPA). The Court informed Plaintiff that it believed that FACTA cases are fundamentally similar to FDCPA cases. *Id.* In response to the Court's order, Plaintiff did not lower his proposed rate; rather, he provided the same "estimated" rate schedule in his post-hearing fee motion, and based this rate schedule on fee awards for Colorado attorneys litigating non-FDCPA cases. *Compare*, (Doc. # 48 at 11) (proposing a reduced rate for the District of Colorado), *with* (Doc. # 55 at 3) (proposing the same rate). Plaintiff contends that these proposed hourly rates are reasonable for two reasons: (1) FACTA cases are more novel and complex than typical FDCPA cases, particularly due to the dearth of FACTA authority in the Tenth Circuit, and (2) this case is similar to other class action cases not involving the FDCPA. (Doc. # 55 at 10–14.) Class Counsel proposed rates of $425.00 an hour for Thomas Zimmerman, $350.00 an hour for Mr. Mair, and $320.00 an hour for Mr. Tamburelli.

Plaintiff has failed to show the Court that FACTA litigation is significantly more complex than FDCPA litigation. Plaintiff's argument is based chiefly on the fact that FDCPA cases are typically settled early without significant motions practice. *See, e.g., Weaver v. Lighthouse Recovery Associates, LLC*, 2013 WL 6096137 (D. Colo. Nov. 19,

5

2013); *Reichers v. Deleware Asset Mgmt., LLC*, 2013 WL 6096136 (D. Colo. Nov. 20, 2013) (finding $250/hour reasonable where defendants defaulted). However, this case also resulted in an early settlement – i.e., before the filing of a motion for summary judgment or dismissal.

As Plaintiff notes in his brief, this Court has awarded more than the standard rate in FDCPA cases where counsel did significant amounts of complex work to prepare a case for trial. *See Santacruz v. Standley & Associates, LLC*, 2011 WL 3366428 (D. Colo. Aug. 4, 2011). In *Santacruz*, this Court granted the plaintiff's motion for summary judgment on liability and the case proceeded to a three-day jury trial on the issue of damages alone. The jury awarded the plaintiff over $29,000 in actual damages as well as the maximum amount of statutory damages ($1000). *Id.* at *1.[1] However, the instant case is plainly distinguishable from *Santacruz*, where the parties "fought tooth and nail at every step of the litigation." *Id.* at *4, n. 4. Here, far from fighting "tooth and nail," the Defendant submitted two substantive filings. (Doc. ## 19, 51.) In fact, after the settlement negotiations began in December of 2013, Defendant's only significant submission to the Court was a jointly filed memorandum in support of the preliminary settlement agreement. (Doc. # 33.) This case clearly is not the same kind of hard-fought contentious battle that would merit a significantly higher-than-average award.

Plaintiff also relies on several non-FDCPA class action cases settled before trial to rationalize his proposed Colorado billing rates. *See* (Doc. # 55 at 12–14) (citing *Nero v. Am. Family Mut. Ins. Co.*, 2013 WL 5323191, at *1 (D. Colo. Sept. 23, 2013); *Franklin*

---

[1] The total fee requested by the attorney in *Santacruz* was $47,445.00, which is $30,000 less than the requested fee in this case. 2011 WL 3366428 at *1.

*D. Azar & Associates, P.C. v. Farmers Ins. Exch.*, 2013 WL 5430779, at *1 (D. Colo. Sept. 26, 2013); *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 2011 WL 3568165, at *1 (D. Colo. Aug. 15, 2011)). Because those cases were highly contentious and strategically complex, they are also distinguishable from the instant case. Indeed, the case dockets reveal the intense motions practice involved: the plaintiffs and defendants in those cases filed a significant number of replies and responses and the defendants filed motions to dismiss.

Here, Defendant did not move to dismiss Plaintiff's claim, nor did Plaintiff file any formal discovery motions. On the contrary, the Court finds that Plaintiff and Defendant cooperated early in this case in order to quickly reach a settlement. The Court does not agree that the sort of adversarial motions practice that took place in *Nero*, *Frank Azar*, and *Brokers Choice* took place in this case. As such, Plaintiff's claims about the complexity of this type of litigation are not an adequate basis for such a significant increase from the FDCPA standard.

However, the Court agrees with Plaintiff that the claim here does merit a greater hourly rate than what is typically awarded in FDCPA litigation, particularly because this was a larger class action and the settlement negotiations were relatively complex. *See Ryals v. City of Englewood*, No. 12-CV-02178-RBJ, 2014 WL 2566288 at *8 (D. Colo. June 6, 2014) (noting that "[FDCPA] cases, arising from a complaint that a collector has employed an abusive collection practice, are numerous, simple, routine and usually settled early for small amounts that often are less than the fee application.") Moreover, experienced attorneys were involved: Mr. Zimmerman and Mr. Mair each have eighteen years of experience, and Mr. Tamburelli has seven. (Doc. # 55 at 3, n.3.) Accordingly,

the Court will use the undisputed standard FDCPA rate of $250.00/hour and adjust upward to compensate for the novelty and complexity in this case. As such, the Court will adjust the hourly rates for Mr. Zimmerman and Mr. Mair to $350.00, and the hourly rate for Mr. Tamburelli to $300.00. The paralegal will be compensated at $90.00 an hour, which is in line with average paralegal rates.

**B.     REASONABLENESS OF HOURS EXPENDED**

On June 18, 2014, the Court also asked Plaintiff to justify what the Court viewed as excessive billing, especially with respect to the use of boilerplate pleadings borrowed from previous cases. Plaintiff contends that the amount of time expended on this case was reasonable for three reasons: (1) Plaintiff could not rely on boilerplate pleadings alone and had to conduct "substantial research" particular to this circuit, (2) the facts of this case required Plaintiff to do "extensive research" on the willfulness requirement under FACTA, and (3) Plaintiff obtained an "extremely favorable class settlement." (Doc. # 55 at 3-10.)

Plaintiff has the burden to show that all hours for which compensation is requested would be reasonably billed to a paying client. *Ramos*, 713 F.2d at 553 However, this Court is not bound to assess the propriety of every time entry. *Fox v. Vice*, 131 S. Ct. 2205, 2217 (2011) ("[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time.")

8

1. <u>Pleadings and Class Certification Documents</u>

On June 18, 2014, the Court denied Plaintiff's original fee application and instructed him to submit supplemental briefing to justify his request for $80,000 in attorney fees. At that hearing, the Court distributed redline comparisons of several filings from this case and another Plaintiff's attorney previously litigated in the Northern District of Illinois. *Compare,* (Doc. ## 3, 5), *with Radaviciute v. Christian Audigier, Inc.*, No. 12-CV-08090, (N.D. Ill. 2012) (Doc. ## 4, 6.) The Court found substantial similarities between these pleadings and asked Plaintiff to explain why he required 30 hours to draft documents when it appeared he used a "cookie cutter" template. Plaintiff responded in his brief that he conducted "substantial research" on FACTA claims and class certification in order to tailor these templates to this jurisdiction. (Doc. # 55 at 3-4.) Plaintiff also argues that this represented a reasonable number of hours because "even where changes were not made, class counsel still verified that the standards and legal principles set forth" were still good law. *Id.* at 5. The Court is not persuaded. Plaintiff did not make any adjustments to his invoice in response to the Court's concerns. Instead, Plaintiff justifies the facially excessive billing on the grounds that the issues in this case required substantial amounts of extra research – while, at the same time, noting that there is very little law on point in the Tenth Circuit. *Id.*

The Court can plainly see the places where changes were made to these documents and cannot accept that these revisions took Plaintiff thirty hours to complete, especially in light of his professed eighteen years of experience in commercial class action litigation and the fact that electronic research allows attorneys to quickly determine whether cases have been overruled. *Robinson v. City of Edmond*, 160 F.3d

1275, 1281 (10th Cir. 1998) ("the overriding consideration" in determining reasonableness of hours is "whether the attorney's hours were 'necessary' under the circumstances"). Accordingly the Court will reduce the hours reasonably expended on the complaint, motion/memo for class certification, and Mr. Zimmerman's first Declaration from **30.4 hours to 20, the hours it believes a reasonable attorney would have incurred and billed in the marketplace under similar circumstances**. *See Weaver v. JTM Performant Recovery, Inc.*, No. 2:13-CV-2408-JTM, 2014 WL 4843961, at *8 (D. Kan. Sept. 29, 2014) (justifying reduction in hours in part because "review of similar filings by [the attorney] indicates that he uses standard boilerplate language for petitions of this sort.")

    2.    Settlement Approval Documents

The Court also made similar comparisons to Plaintiff's memoranda in support of the final settlement agreements and again found substantial similarities between the filings submitted in this case and class counsel's past cases. *Compare*, *e.g.*, (Doc. # 46), *with Radaviciute*, No. 12-CV-08090 (Doc. # 40.) In the memorandum in support of final settlement approval, Plaintiff cites a single Tenth Circuit opinion and a single District of Colorado case.[2] (Doc. # 46 at 7.) Mr. Zimmerman billed 25.8 hours researching and filing these documents in support of settlement approval. Plaintiff contends that substantial amounts of research were necessary to determine the law in this jurisdiction, but the Court finds little use of this purported research in the actual memoranda or motions. Accordingly, the Court will reduce the amount of time reasonably billed for these tasks **from 25.8 hours to 15**.

---

[2] This document is eighteen pages.

### 3. Motion for Attorney Fees and Incentive Award for Class Representative

For similar reasons, the Court finds that Plaintiff did not exercise good billing judgment in charging for 16 hours of work on the original motion for attorney fees. The Court finds that Plaintiff did not adjust his billed time for his duplication of efforts from earlier cases. *Compare*, *e.g.*, (Doc. # 48), *with Radaviciute*, 12-cv-08090 (Doc. # 42.) As such, the Court will reduce the hours reasonably billed for this task from **16.6 hours to 10.**

### 4. Duplicative Work Done by Associate

In addition to Mr. Zimmerman's failure to exercise good billing judgment with respect to his own time, the Court also found examples of duplicative billing where the associate, Mr. Tamburelli, charged for the same tasks as class counsel. For example, Mr. Zimmerman submits a time entry reading: "Draft memorandum in support of motion for final approval of class action settlement. 3.9 hours." (Doc. # 48-2 at 34.) Later, Plaintiff lists an entry for the associate on the case that reads "Draft memorandum in support of final approval. 5.7 hours." *Id.* at 35. This appears to be the same exact task being performed by two attorneys. Class counsel later revised the work done by the associate as well as his own draft. *Id.* at 36. It is unclear why this was done, whether the attorneys were working on separate portions of the document, or how it may have contributed to the settlement of this case. Additionally, the Court finds that all the work the associate did on memorandum in support of attorney fees, the incentive award, and the final settlement approval memorandum was duplicative, because another timekeeper had already billed for these tasks. To prevent duplicative charges the Court will reduce the hours billed by the associate **from 44.3 hours to 30**.

11

### 5.     Communication with Class Representative

Class counsel billed for 10.5 hours of phone calls and emails to the class representative. At the June hearing, the Court expressed concerns about one of these entries and requested supplemental briefing to justify the amount of time spent in telephone consultation with the class representative. Class counsel explained that he spent time with the class representative reviewing all the pleadings, informal discovery, and consulted him before the deposition of Defendant's CFO. The Court finds that class counsel needed no additional information from the class representative to establish a claim beyond the receipt (demonstrating a prima facie FACTA violation). Class counsel, should, of course, provide advice or explanation of the case to the class representative. However, the amount of time spent in such tasks must be reasonable. Thus the Court will reduce the amount of time reasonably billed for conversations between class counsel and the class representative from **10.3 hours to 5**.[3]

### C.     CLASS REPRESENTATIVE'S INCENTIVE AWARD

The settlement agreement provided that the class representative should be provided with a $5,000 incentive award. "Incentive awards [to class representatives] are justified when necessary to induce individuals to become named representatives." *UFCW Local 880-Retail Food Employers Joint Pension Fund v. Newmont Min. Corp.*, 352 F. App'x 232, 235 (10th Cir. 2009) (quoting *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722–23 (7th Cir.2001)). The *UFCW* court also noted, however, that there is no need for such an award if at least one class member would have stepped forward

---

[3] The Court also notes that, for a case of this nature (with almost-200 partner hours), there was very little work delegated to the Plaintiff's paralegal (5.9 hours).

12

without the lure of an "incentive award," and that a class representative "may" be entitled to an award for personal risk incurred or additional effort and expertise provided for the benefit of the class. *Id.* Trial courts make a determination about the reasonableness of an incentive award on a case-by-case basis. *See Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003). In deciding whether such an award is warranted, "relevant factors include the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

Plaintiff's reliance on the "expertise" of the class representative in this case does not provide an adequate basis for an incentive award. Here, the class representative is an average consumer, only familiar with the FACTA truncation requirements from a previous lawsuit. Presumably, class counsel did not need any information from the class representative apart from an oral account of the transaction at issue and a receipt that shows a FACTA violation. Moreover, the time and effort he spent consulting with Class Counsel, as discussed above, appears to be far more than was actually necessary.

The Court agrees that some award would be necessary to incentivize a plaintiff to come forward on behalf of the class in this case, and that the class has benefitted from his actions. However, the class representative incurred no personal risk by becoming a named plaintiff in this case. Moreover, Plaintiff made no arguments justifying the significant amount of money requested, besides stating that Class Counsel "regularly discussed the pleadings and discovery with the Class Representative." The

Court finds that roughly half of the negotiated amount constituted an incentive for the Plaintiff to bring his claim, and will reduce the class incentive award accordingly from **$5,000 to $2,500**.

### III. CONCLUSION

For the foregoing reasons, it is ORDERED that Plaintiff's Renewed Motion for Attorney Fees, Costs, and an Incentive Award for the Class Representative (Doc. # 55) be GRANTED IN PART and DENIED IN PART.  Consistent with the above analysis, it is ORDERED that class counsel is entitled to attorney fees in the amount of $73,266 and costs in the amount of $2,252.93.  Additionally it is ORDERED that the class representative is entitled to an incentive award of **$2,500**.

| Timekeeper | Proposed Hourly Rate | Adjusted Hourly Rate | Total Hours | Adjusted Hours | Proposed Lodestar | Adjusted Lodestar |
|---|---|---|---|---|---|---|
| Zimmerman | $425 | $350 | 198.4 | 171.9 | $84,320 | $60,165 |
| Tamburelli | $320 | $300 | 44.3 | 30 | $14,176 | $9,000 |
| Mair | $350 | $350 | 10.2 | 10.2 | $3,570 | $3,570 |
| Paralegal | $90 | $90 | 5.9 | n/a | $531 | $531 |
| | | | | | **TOTAL ADJUSTED LODESTAR** | $73,266 |

DATED:  January 16, 2015

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge